UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**CENTAURUS FINANCIAL, INC.,**

   Plaintiff,

   v.                                                  Case No. 19-CV-243

**ADAM AUSLOOS and FINANCIAL INDUSTRY
REGULATORY AUTHORITY,**

   Defendants.

**DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AND DEFENDANT'S MOTION TO DISMISS**

Centaurus Financial, Inc. seeks declaratory and injunctive relief against Adam Ausloos, precluding him from pursuing an arbitration proceeding he filed against Centaurus before the Financial Industry Regulatory Authority ("FINRA"). Centaurus has moved for a preliminary injunction enjoining Ausloos from arbitrating the dispute before FINRA until its request for declaratory judgment has been decided. (Docket # 7.) Ausloos subsequently moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue, or alternatively to stay the litigation until the parties have completed arbitration before FINRA. (Docket # 17.) For the reasons more fully explained below, Centaurus' motion for a preliminary injunction is granted and Ausloos' motion to dismiss is denied.

**BACKGROUND**

Centaurus, a California corporation, is a national, independent broker/dealer licensed to offer securities, investment advisory services, and insurance products throughout most of the fifty states. (Compl. ¶ 1.) Centaurus is registered with the United States

Securities & Exchange Commission ("SEC") and is a member of FINRA. (*Id.*) FINRA is a Delaware nonprofit corporation that is a securities self-regulatory organization, registered with the SEC, whose principal place of business is Washington, D.C. (*Id.* ¶ 4.) FINRA regulates securities brokerage firms doing business with the public in the United States, including in Wisconsin. (*Id.*) Ausloos is a resident of Wisconsin (*id.* ¶ 3) and is an executive and sole owner of Adviceworks Wealth Advisors, LLC, a Registered Investment Advisory firm (*id.* ¶ 10).

Ausloos avers that in mid-2017, he engaged in a business relationship with Robert Binkele, a registered securities broker. (Affidavit of Adam Ausloos in Supp. of Mot. to Dismiss ("Ausloos Aff.") ¶¶ 3–4, Docket # 19.) Centaurus alleges that Binkele is a "registered representative" of Centaurus. (Compl. ¶ 13.) Ausloos alleges that Binkele owns Estate Planning Team, Inc. ("EPT"), a company that offers and sells, either directly or through affiliates, certain deferred sales trusts ("DSTs"). (Ausloos Aff. ¶ 5.) Ausloos alleges that on May 22, 2017, he and Binkele entered into a "Marketing Sublicense Agreement" that contains a clause guaranteeing a return on investment. (*Id.* ¶¶ 6–7 and Ex. B, Docket # 19-1.) Ausloos alleges that pursuant to the contract, he paid Binkele and EPT $125,000.00 in exchange for the promise of a guaranteed income. (*Id.* ¶ 8.)

Ausloos alleges that Binkele defrauded him out of the $125,000.00 by selling him an unregistered security. (*Id.* ¶ 4.) On December 14, 2018, Ausloos initiated a FINRA arbitration against Centaurus and Binkele, and FINRA assigned Milwaukee, Wisconsin as the arbitration location because it was convenient to Ausloos. (*Id.* ¶ 13.) Ausloos asserts the following claims against Centaurus in the FINRA arbitration: (1) Fraud; (2) Theft of Investment; (3) Misrepresentation; (4) Bail [sic] and Switch; (5) Ponzi Scheme; (6) Selling

Unregistered Security; (7) Failure to Supervise; (8) Failure to Investigate Complaint; (9) Additional FINRA Regulations Violations; and (10) Additional Financial Crimes. (*Id.* ¶ 14.)

Centaurus alleges that all of Ausloos' claims in the FINRA arbitration relate to his and his company's, Tax Deferral Trustee Services, alleged contract and subsequent purchase of a trusteeship from Binkele through Binkele's company, EPT. (*Id.* ¶ 15.) Centaurus alleges that EPT is not affiliated with Centaurus and is not a FINRA member firm. (*Id.* ¶ 16.) Centaurus further alleges that although Binkele was a registered representative of Centaurus, there is no evidence that Binkele dealt with Ausloos in his capacity as a registered representative for Centaurus. (*Id.* ¶ 17.) Centaurus alleges that there is no agreement to arbitrate between Centaurus and Ausloos and neither Ausloos nor his company ever purchased any security from Centaurus. (*Id.* ¶¶ 18–19.) Thus, Centaurus asserts that it has no obligation to arbitrate any of the claims brought by Ausloos. (*Id.* ¶ 23.) Centaurus now seeks a declaratory judgment that Ausloos cannot compel Centaurus to arbitrate and a preliminary and permanent injunction enjoining Ausloos' pursuit of his claims against Centaurus in the FINRA arbitration. (*Id.* ¶ 28.)

## ANALYSIS

1. *Subject Matter Jurisdiction*

Although neither party has raised the issue, as a threshold matter, I have a duty to independently ascertain whether the court has subject matter jurisdiction over the instant dispute. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a party who expects to eventually be sued (like Centaurus) to determine its rights and liabilities without waiting for its adversary, the presumptive plaintiff (Ausloos), to sue. *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th

Cir. 2009). The Declaratory Judgment Act does not supply the court with independent subject matter jurisdiction; jurisdiction depends upon the nature of the anticipated claims. *Id.*

Centaurus alleges that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the underlying Statement of Claim seeks relief under federal securities laws. (Compl. ¶ 7.) It is not clear, however, what federal securities laws Ausloos' alleged claims fall under. It appears, rather, that Ausloos alleges state common law claims (such as fraud, misrepresentation, and failure to supervise), violations of FINRA rules, and other non-causes of action (such as "other financial crimes"). Because Ausloos' presumed complaint to compel Centaurus to arbitrate would not, on its face, include an action arising under federal law, there is no subject matter jurisdiction based on a federal question.

Centaurus also, however, alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. (*Id.* ¶ 5.) Centaurus is a corporation and for diversity jurisdiction purposes, a corporation is a citizen of any state in which it has been incorporated and the state where it has its principal place of business. § 1332(c). Centaurus alleges that it is a California corporation with its principal place of business in California and that Ausloos is a citizen of Wisconsin. (Compl. ¶¶ 1, 3.) Thus, the parties are citizens of different states. Further, according to Centaurus, Ausloos seeks damages of at least $125,000.00 in the request for arbitration he initiated against Centaurus. (Docket # 1-1 at 11.) Ausloos has not contested Centaurus' jurisdictional allegations. Where jurisdictional allegations are not contested, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S.

283, 288–89 (1938); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (vacating judgment of dismissal and remanding with instructions to resolve the dispute on the merits where none of the plaintiff's jurisdictional allegations was contested). Thus, the Court has diversity jurisdiction over Centaurus' declaratory judgment action.

  2. *Motion to Dismiss for Improper Venue*

  Ausloos moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. (Docket # 17.) He argues that his motion to dismiss is properly brought under Rule 12(b)(3) because the Seventh Circuit in *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (internal quotation and citation omitted) stated that "we have held that a motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)." However, the *Faulkenberg* court also stated that a "Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district." *Id.* at 808. Neither party contends that arbitration must occur outside of the Eastern District of Wisconsin; thus, *Faulkenberg* is inapplicable to this case. *See Kost v. PNC Bank, Nat. Ass'n*, No. 4:15-CV-00056-RLY, 2015 WL 5521817, at *4 (S.D. Ind. Sept. 17, 2015).

  What Ausloos actually argues in effect is for judgment in his favor on the allegations in Centaurus' complaint. But Ausloos has not moved for judgment on the pleadings or for summary judgment and I will not recharacterize his motion to dismiss as such. As a motion to dismiss for improper venue, his motion must be denied. Ausloos alternatively requests a stay of the litigation pending the outcome of the arbitration. (Def.'s Br., Docket # 18 at 14.)

But the very nature of Centaurus' complaint is a determination of whether it is even subject to the arbitration currently pending before FINRA. If this action were stayed pending arbitration, there would be no action left to return to once the arbitration was held and Centaurus would be denied the opportunity to argue it is not subject to arbitration. For these reasons, Ausloos' motion to dismiss or stay the litigation is denied.

      *3.*     *Motion for Preliminary Injunction*

Centaurus moves for a preliminary injunction enjoining Ausloos from continuing with the FINRA arbitration pending a determination of the arbitrability of the dispute. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citations omitted) (emphasis in original). Granting a preliminary injunction involves the "exercise of a very far-reaching power" and is "never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citations omitted).

To justify a preliminary injunction, Centaurus must first make a threshold showing that it has a reasonable likelihood of success on the merits, no adequate remedy at law exists, and it will suffer irreparable harm if a preliminary injunction is denied. *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If Centaurus makes this preliminary showing, I will then consider whether the irreparable harm Centaurus will suffer without injunctive relief is greater than the harm Ausloos will suffer if the preliminary injunction is granted, and whether a preliminary injunction will harm the public interest. *Starsurgical, Inc. v. Aperta, LLC*, 832 F. Supp. 2d 1000, 1002 (E.D. Wis. 2011). However, if Centaurus does not establish a likelihood of success on the merits or that it will suffer irreparable harm if the

injunction is not granted, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citation omitted).

Centaurus can establish that it is likely to succeed on the merits by showing that its chances of prevailing are better than negligible. *Omega Satellite Prods. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982); *see also Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986) (citation omitted) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that the plaintiff's chances are better than negligible . . . .'"). A district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits. *Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010*); see also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) ("Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings.").

### 3.1 Likelihood of Success on the Merits

Centaurus argues there is a strong likelihood of success on the merits because Ausloos' claims all relate to his and his company's alleged contract with Binkele and Binkele's company, EPT, not with Centaurus. (Docket # 7 at 2–3.) The crux of Ausloos' argument revolves around FINRA Rule 12200, which states:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4106 (last visited May 8, 2019). Ausloos does not contend that he has a written agreement to arbitrate with Centaurus. Rather, he argues that he can compel arbitration pursuant to FINRA Rule 12200 because he is a customer of Binkele and Centaurus, the dispute arose between him (a customer) and Centaurus' associated person (Binkele), and the dispute arose from the business activities of both Binkele and Centaurus. (Def.'s Br., Docket # 18 at 6.) Whether Ausloos can compel Centaurus to arbitrate turns on whether Ausloos is a "customer" of Centaurus pursuant to FINRA. The only definition FINRA gives for a "customer" is in the negative: "A customer shall not include a broker or dealer." FINRA Rule 12100(i). Several circuits, however, have considered the issue and interpreted the meaning of "customer" under FINRA Rule 12200. In *Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014), the Second Circuit found that a "customer" under FINRA Rule 12200 was "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." In *Morgan Keegan & Co. v. Silverman*, 706 F.3d 562, 566 (4th Cir. 2013), the Fourth Circuit concluded that the term "customer" in Rule 12200 refers to an entity that is "not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities," namely, "the activities of investment banking and the securities business." The Ninth Circuit defined "customer" as "a non-broker and non-dealer who purchases commodities or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and

8

securities business activities." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). The Eighth Circuit construed "customer" to "refer[ ] to one involved in a business relationship with [a FINRA] member that is related directly to investment or brokerage services." *Berthel Fisher & Co. Fin. Servs. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012) (internal citation omitted).

Ausloos argues that he is a customer of Centaurus because he purchased a good or service (i.e., an unregistered security) from Binkele, who is Centaurus' associated person. (Def.'s Br., Docket # 18 at 9.) Ausloos argues that under FINRA's rules, Centaurus was under a clear obligation to supervise the activities of its associated persons. (*Id.*) But Ausloos brings his arbitration action to recover damages arising under a marketing sublicense agreement dated May 22, 2017 between EPT (although the copy provided is unsigned, the signature block is for Binkele as CEO of EPT) and Tax Deferral Trustee Services, by Ausloos as its managing member. (Docket # 19-1 at 37.) Centaurus' name does not appear in this agreement.

Thus, Ausloos relies almost exclusively on a previous document, dated September 29, 2016, to support his assertion that he is Centaurus' customer. (Def.'s Reply Br. at 4–5, Docket # 28.) While Centaurus argues this agreement is not at issue in the FINRA arbitration (Pl.'s Br. at 17 n.7, Docket # 23), the September 29, 2016 document is incorporated by reference into the May 22, 2017 agreement (Docket # 19-1 at 32). The September 29, 2016 agreement provides Centaurus a commission of 2.5% of gross fees and other compensation earned. (Docket # 19-1 at 49.) However, this unsigned agreement is between EPT (by Binkele as president) and Ausloos. (*Id.* at 52–53.) While Ausloos argues that he agreed to pay Centaurus for its services (Def.'s Reply Br. at 5), the language of the

9

agreement states otherwise: "In exchange for your commitment to an exclusive relationship with EPT . . . EPT shall provide you with the EPT Services." (*Id.* at 51.)

The circuits' various definitions of "customer" pursuant to FINRA Rule 12200 all have one thing in common—a business relationship between the purported customer and the FINRA member, usually by purchasing goods or services from a FINRA member. But Ausloos does not show that he purchased anything from Centaurus, who is the FINRA member. Rather, as his contract states, he purportedly purchased an alleged security from EPT. Ausloos seemingly argues that if one has a business relationship with an "associated person" of a FINRA member, this makes the person a customer of the FINRA member. This cannot be correct. It is possible that an "associated person" of a FINRA member could have an independent company (as Binkele appears to have with EPT). If one does not purchase a good or service from the FINRA member, he is not the FINRA member's customer simply because he purchased the good or service from an "associated person" acting on behalf of his or her own independent company. I fail to see how the September 29, 2016 agreement to provide Centaurus commission somehow makes Ausloos Centaurus' customer. Simply because Centaurus is benefiting financially from Binkele and Ausloos' bargain does not mean that Ausloos is purchasing good or services from Centaurus. On the facts currently before me, I find that Centaurus is reasonably likely to succeed on its claim that the underlying dispute is not arbitrable because no customer relationship between Ausloos and Centaurus exists.

### 3.2 No Adequate Remedy at Law and Irreparable Harm

I also find that Centaurus has shown it has no adequate remedy at law and it will suffer irreparable harm if a preliminary injunction is denied. The court in *Edward E. Gillen*

*Co. v. Ins. Co. of the State of Pennsylvania*, 747 F. Supp. 2d 1058, 1062 (E.D. Wis. 2010) (collecting cases) found that these two elements are "easily met" when one faces compelled arbitration for an unarbitrable dispute. "Numerous cases hold that a party forced into an unauthorized arbitration proceeding is 'irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *Id.* Thus, Centaurus has established these elements.

### 3.3   Balance of Harms

Because Centaurus has made the requisite preliminary showing, I turn now to whether the irreparable harm Centaurus will suffer without injunctive relief is greater than the harm Ausloos will suffer if the preliminary injunction is granted. I must also take into consideration the public interest. These factors are weighed on a sliding-scale approach. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002), *as amended* (Oct. 18, 2002). "That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." *Id.* The threatened injury to Centaurus far outweighs the threatened injury to Ausloos if he is wrongfully enjoined from pursuing arbitration at this time. While Ausloos argues that he lost $125,000.00 and seeks redress in the "exact forum that was established to protect investors," (Def.'s Br., Docket # 13 at 3), all Ausloos faces is a delay in the arbitration process if it turns out that the arbitration provision is enforceable. But the injury Centaurus would face being wrongfully compelled to arbitrate is irreparable. Finally, granting the injunction would not harm the public interest. Although there is a general public policy in favor of arbitration, this policy will not be advanced if one is forced to arbitrate when he or she has not agreed to do so. For these reasons, I will grant Centaurus' motion for a preliminary injunction.

3.4 Bond

Fed. R. Civ. P. 65(c) provides that the court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Centaurus has requested the Court waive the requirement of bond because the potential harm to Ausloos is minimal and there is no foreseeable economic harm to him. (Docket # 7 at 4.) Ausloos has not responded to Centaurus' request. Because the only potential harm to Ausloos is a delay in pursuing arbitration while the issue is litigated in federal court, I find a bond unnecessary in this case. *See Gillen Co.*, 747 F. Supp. 2d at 1062 ("A bond is generally unnecessary where there has been no proof of likelihood of harm, or where the injunctive order was issued to aid and preserve the court's jurisdiction over the subject matter involved.") (internal quotation and citation omitted).

*4. FINRA Named as a Party*

Centaurus also sues FINRA; however, its complaint alleges no causes of action against FINRA and seeks no specific relief against FINRA. Centaurus acknowledges that it does not seek any relief from FINRA beyond following the court's instructions. Counsel stated that FINRA was only named as a party because, in counsel's experience, it makes the process "much smoother." (Declaration of Kendra S. Canape ¶ 10, Ex. 6, Docket # 24-6 at 7.) This is an insufficient reason to sue FINRA. As counsel for FINRA noted, FINRA does not need to be a party to the action to receive notice of a court order. (*Id.*) Given that no relief is requested against FINRA, FINRA is not properly joined as a party to this action and will be dismissed. Fed. R. Civ. P. 21 (Although misjoinder of parties is not a ground for

dismissing an action, the court may at any time, on motion or on its own, on just terms, add or drop a party from an action).

## CONCLUSION

Centaurus seeks a determination from this Court as to whether it is compelled to participate in an arbitration initiated by Ausloos and currently pending before FINRA. Ausloos moves to dismiss Centaurus' complaint for improper venue; however, Ausloos' motion to dismiss is denied because Ausloos does not properly challenge venue, but in effect moves for judgment in his favor on Centaurus' complaint. Centaurus also moves for a preliminary injunction enjoining Ausloos from compelling Centaurus to arbitrate the dispute before FINRA. Centaurus' motion for a preliminary injunction is granted and Centaurus' requirement to post bond under Fed. R. Civ. P. 65(c) is waived.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for a preliminary injunction (Docket # 7) is **GRANTED**. Ausloos is hereby enjoined from compelling Centaurus to arbitrate the dispute before FINRA while the issue of arbitrability is pending in federal court. Centaurus is not required to post bond.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss (Docket # 17) is **DENIED**.

**FINALLY, IT IS ORDERED** that FINRA is dismissed as a party to this action.

Dated at Milwaukee, Wisconsin this 8th day of May, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge